```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :      **MEMORANDUM**
        -against-                                           :      **DECISION & ORDER**
                                                            :
                                                            :      16-CR-280 (BMC)
OSVALDO MARIA VASQUEZ,                                      :
                                                            :
                    Defendant.                              :
                                                            :
----------------------------------------------------------- X
```

**COGAN,** District Judge.

Defendant Osvaldo Maria Vasquez is charged with conspiracy to distribute cocaine, possession of cocaine with intent to distribute, conspiracy to distribute and possess with intent to distribute ADB-Fubinaca, and possession of ADB-Fubinaca with intent to distribute. Defendant was arrested outside of his place of business, and a search of the premises followed on that same day. Defendant moves to suppress the evidence seized during the search on the basis that the warrant was improperly executed at night. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

After the complaint was filed in this case, Magistrate Judge Marilyn D. Go issued an arrest warrant for defendant and a search warrant permitting the Government to search Excellent Tire Shop Services (the "Tire Shop"), located in Queens Village, New York. Defendant, along with others, owned the Tire Shop. The warrant stated that it must be executed "in the daytime," specifically "6:00 a.m. to 10 p.m."

Several days later, on March 29, 2016, at approximately 7:40 p.m., Federal Bureau of Investigation ("FBI") agents arrested defendant as he was exiting the Tire Shop in a vehicle.

After his arrest, the FBI agents acquired the keys to the Tire Shop from defendant's person.[1] The Government, relying on the affidavit of FBI Special Agent Brian Nugent, claims that the search of the Tire Shop began at 9:26 p.m. that night, March 29, 2016, when the agents conducted a security sweep. An FBI Report documenting the search also states that the search began at 9:26 p.m. According to Nugent, after completion of the security sweep, the agents entered the Tire Shop at around 9:40 p.m. At that time they began documenting their search with a video camera. The video footage of the search begins with a law enforcement agent stating that it is 9:40 p.m. on March 29, 2016.

Upon entry into the Tire Shop, the agents observed unknown chemicals and powders. Due to the presence of hazardous chemicals, law enforcement chemists and other individuals dressed in hazardous material gear assisted with the search warrant to help safely remove the evidence. After finding chemical bottles concealed within stacks of tires, it became necessary for the agents to search inside all of the many stacks of tires on the premises. They then inventoried the various chemicals and substances found during the search. Due to the complex nature of the evidence and the obstacles on the premises, the agents did not complete the search until 2:00 a.m. At no point during the search was anyone other than law enforcement present at the Tire Shop.

Defendant contests the Government's time line. He claims that the search did not begin until after 10:00 p.m. on March 29, 2016. However, the only evidence he has submitted in support of this claim is his affidavit in which he avers that he has "learned from others that the

---

[1] The Government alleges that defendant provided FBI agents with his keys to the Tire Shop. Defendant alleges that the agents took the keys out of his pocket. This disputed factual issue is immaterial to the resolution of the motion.

FBI did not enter [the Tire Shop] until after 10 p.m."[2] He further argues that the discrepancy between the FBI report, which states that the search began at 9:26 p.m., and the FBI video footage of the search, which indicates that the search began at 9:40 p.m., casts doubt on when the search actually began.

## DISCUSSION

Defendant moves to suppress the evidence seized during the March 29, 2016 search of the Tire Shop on the grounds that the search warrant was improperly executed at night in violation of Federal Rule of Criminal Procedure 41 and the Fourth Amendment.

First, defendant has failed to raise a sufficient factual dispute to warrant an evidentiary hearing. A defendant is not automatically entitled to an evidentiary hearing on his motion to suppress evidence. United States v. Barrios, 210 F.3d 355 (2d Cir. 2000). A defendant must show that there are contested issues of fact that necessitate a hearing. To make such a showing, a defendant's moving papers must be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992); see also United States v. Mottley, No. 03 CR. 303, 2003 WL 21939704, at *1 (S.D.N.Y. Aug. 12, 2003) (denying the defendant's motion to suppress without a hearing because his affidavit, which was the only evidence submitted in support his motion and consisted of conclusory assertions, was insufficient to raise a question of fact); United States v. Castellano, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985) ("No evidentiary hearing need be held where a defendant's allegations are general and conclusory or are based upon suspicion and conjecture."). Moreover, a defendant must support

---

[2] In his affidavit, defendant also avers that law enforcement did not gain possession of his keys until 9:20 or 9:30 p.m. This does nothing to support his contention that the search did not start at 9:26 p.m. The FBI already had a search warrant for the Tire Shop in their possession at the time defendant was arrested. They did not need defendant's keys to enter the premises.

the facts alleged in his motion with an affidavit of someone with personal knowledge of those facts. United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967); United States v. Wilson, 493 F. Supp. 2d 364, 380 (E.D.N.Y. 2006) ( "[C]ourts in this district consistently deny hearings where defendants have failed to provide affidavits alleging facts based on personal knowledge.").

Defendant's conclusory affirmation that he "has learned from others" that law enforcement did not start the search until after 10 p.m. – without identifying such persons or providing any detail as to how they know this information – is insufficient to raise a factual dispute. It does nothing to undermine the affidavit of Special Agent Nugent, the video footage of the search, or the FBI report documenting the search. Thus, whether the search was "executed" as of 9:26 p.m., when law enforcement conducted a security sweep of the premises, or as of 9:40 p.m., when law enforcement entered the Tire Shop, it certainly began prior to 10:00 p.m. The search was thus executed in the daytime in accordance with the search warrant's requirements.

Defendant further argues that the search was illegal because it continued for numerous hours after 10:00 p.m. The Government admits that the search was not completed until 2:00 a.m., but argues that this was not a violation of Federal Rule of Criminal 41 nor unreasonable under the Fourth Amendment.

Federal Rule of Criminal Procedure 41(e)(2)(A)(ii) provides that a search warrant must be "execute[d] . . . during the daytime, unless the judge for good cause expressly authorizes execution at another time." "'Daytime' means the hours between 6:00 a.m. and 10:00 p.m. according to local time." Fed. R. Crim. P. 41(a)(2)(B). "Execute," however, does not mean complete. A search warrant is considered to be "executed" at the time the search is initiated, not when it ends. This means that a search that begins during the daytime, but continues after 10:00 p.m., does not violate Rule 41. See, e.g., Yanez-Marquez v. Lynch, 789 F.3d 434, 466 n. 19 (4th

4

Cir. 2015) ("The relevant inquiry in determining when a search warrant was executed is the time at which the search began, not when it ended. . . . [I]t is generally recognized that officers who properly execute a daytime warrant between the hours of 6:00 a.m. and 10:00 p.m., may extend their search into the nighttime hours."); United States v. Burgard, 551 F.2d 190, 193 (8th Cir. 1977) ("Searches which began during daytime and continued into the night have been held not to violate [Rule 41]."). Here, then, the continuation of the search until 2:00 a.m. did not violate Rule 41.

A search that continues into the night does not violate the Fourth Amendment as long as the extension of the search was reasonable. See United States v. Young, 877 F.2d 1099, 1105 (1st Cir. 1989) ("[T]he reason for limiting nighttime searches[,] . . . preventing abrupt intrusions on sleeping residents in the dark[,] . . . does not apply once officers have begun the search in the daytime and – . . . have removed the residents."); United States v. Joseph, 278 F.2d 504, 505 (3d Cir. 1960) (holding that a search that began during the afternoon, but was not completed until after 10 p.m., was a reasonable continuation of a daytime search pursuant to the daytime warrant). Whether the extension of a search into the nighttime is reasonable depends upon the totality of the circumstances, including: the amount of contraband found, the difficulties of finding it, the justification for the extension of the search, the inconvenience to residents, the degree of freedom allowed to the defendant during the search, and whether the search was conducted in a professional manner. See Young, 877 F.2d at 1105; United States v. McCarty, 475 F.3d 39, 44 (1st Cir. 2007); cf. United States v. Gagnon, 635 F.2d 766, 769 (10th Cir. 1980) (finding that a search that lasted two days was not unreasonable because law enforcement needed to secure the contraband until it could be safely removed from the premises and the intrusion was minimal as the property was a barn located on an uninhabited land).

5

Here, the extension of the search for approximately four hours, until 2:00 a.m., was reasonable under the circumstances. As Special Agent Nugent avers, the presence of numerous hazardous materials required law enforcement to take extra precautions and follow certain procedures to complete the search. Due to the fact that chemicals were found concealed within one of the large stacks of tires, law enforcement also needed to complete the time-consuming task of searching within each of the many stacks of tires for additional evidence. Further, because defendant had been arrested prior to the search, he was not affected by its extension into the night. And, in fact, no residents were disturbed. The search thus complied with both Rule 41 and the Fourth Amendment.

Moreover, even if I accept defendant's version of the facts, and assume that the search was executed after 10:00 p.m., his motion to suppress must still be denied. A violation of Rule 41 does not automatically warrant the exclusion of evidence. Rather, the exclusionary rule will only apply if the Rule 41 violation rises to a "constitutional magnitude." United States v. Burke, 517 F.2d 377, 386 (2d Cir. 1975). Otherwise, it will be considered to be a technical error that "does not affect substantial rights" and "must be disregarded." Fed. R. Crim. Pro 52(a). The Second Circuit has directed that a "violation[] of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if [Rule 41] has been followed or (2) there is evidence of intentional and deliberate disregard of a provision in [Rule 41]." Id. at 386-87.

There is no basis to exclude the evidence here. First, even if the search warrant was executed after 10:00 p.m., defendant was not prejudiced. The March 29 search was in no way "abrasive." Neither defendant nor any non-law enforcement individual was present during the search, and, if the search had been conducted the following day at 6:00 a.m., the same

procedures would have been used.  Likewise, even if the search did not occur on the night of March 29, the same evidence would have been seized the next morning.  Second, there is no evidence, nor does defendant make any allegations, of intentional misconduct.

Several courts have refused to exclude evidence collected during a nighttime search that violated Rule 41, sometimes even where the defendant was present during the search, finding that there was no prejudice to the defendant.  See, e.g., United States v. Bagaric, 706 F.2d 42, 66 n.19 (2d Cir. 1983) (rejecting the defendant's argument that the nighttime search of his premises required suppression because even if there was "no reasonable cause for the nighttime entry," the defendant had not made any allegations of prejudice or misconduct); United States v. Ravich, 421 F.2d 1196 (2d Cir. 1970) (denying the defendant's motion to suppress evidence collected in a nighttime search of two unoccupied motel rooms because "delay in executing the warrants until daybreak would not even have affected substantial rights") (internal quotation marks omitted); United States v. Wilson, No. 15-CR-142, 2017 WL 1133419, at *6 (W.D.N.Y. Feb. 27, 2017) (denying the defendant's motion to suppress because there was no prejudice where the search of the defendant's mother's house, where the defendant was present, was executed approximately forty minutes prior to 6:00 a.m.); United States v. Cardona, No. 14-CR-314, 2015 WL 769577 (S.D.N.Y. Feb. 24, 2015) (denying the defendant's motion to suppress on the ground that the warrant to search his residence was executed prior to 6:00 a.m. and rejecting the defendant's claim that he was prejudiced because he might have been awake and would not have experienced the same "stress and diminished cognitive functioning"); United States v. Olsen, No. 04 CR 646, 2006 WL 270249 (E.D.N.Y. Jan. 25, 2006) (noting that even if the search of the defendant's residence occurred prior to 6:00 a.m., the defendant was not prejudiced because there was no indication that it would not have occurred or that the defendant would not have been "less

7

shocked and disoriented by a later search") (internal quotation marks and alterations omitted); see also United States v. Twenty-Two Thousand, Two Hundred Eighty Seven Dollars ($22,287.00), U.S. Currency, 709 F.2d 442 (6th Cir. 1983) (holding that the exclusionary rule did not apply to evidence seized pursuant to daytime search warrant, even if it was executed at night, because there was no evidence that the search would have been less "abrasive" if it occurred prior to 10 p.m.); United States v. Gibbons, 607 F.2d 1320 (10th Cir. 1979) (denying the defendant's motion to suppress on the ground that his footlocker was improperly searched at night).

Finally, the constitutional concern of the "peculiar abrasiveness of official intrusions" during the nighttime is likely not even applicable here as the premises searched was a business, not a private residence. See United States v. Ravich, 421 F.2d 1196, 1201 (2d Cir. 1970) (finding that the reason for requiring specific authorization of night search is "wholly inapplicable to two unoccupied motel rooms . . . ."); United States v. Gibbons, 607 F.2d 1320, 1326 (10th Cir. 1979) (explaining that the "focal point of contemporary antipathy [to nighttime searches is] centered around the intrusion into the home," and therefore a nighttime search that does not intrude into a home or physically disturb the owner of the property searched does not make a strong case for unreasonableness). Indeed, "[t]he Fourth Amendment protects people, not places," Katz v. United States, 389 U.S. 347, 351 (1967), and no persons were subject to the intrusion of the nighttime search in this case.

## CONCLUSION

The search of the Tire Shop, whether or not it was executed prior to 10 p.m., did not violate the Fourth Amendment. Defendant's motion to suppress the evidence seized during the search is denied.

**SO ORDERED.**

                                                          U.S.D.J.

Dated: Brooklyn, New York
         April 23, 2017